Paul R. Kiesel [SBN 119854]
Steven D. Archer [SBN 63934]
E-Mail: archer@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: 310.854.4444
Facsimile:  310.854.0812

Paul O. Paradis *Pro Hac Vice*
Gina M. Tufaro *Pro Hac Vice*
Efrat Pellet *Pro Hac Vice*
**HORWITZ, HORWITZ & PARADIS**
**ATTORNEYS AT LAW**
570 7th Avenue, 20th Floor
New York, NY 10018
Telephone: 212.986.4500
Facsimile:  212.986.4501

Richard L. Moomau [SBN 38112]
**MOOMAU & ASSOCIATES**
300 Esplanade Drive, Suite 900,
Oxnard, CA 93030
Telephone: 805.981.3979
Facsimile:  805.981.1765
**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KERRY O'SHEA,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>**FORD MOTOR COMPANY,**<br>**A Delaware Corporation**<br><br>Defendant. | **Case No. 2:10-cv-07640-JHN-MANx**<br>Honorable Jacqueline H. Nguyen<br>Courtroom No. 790 Roybal<br><br>**PLAINTIFF'S OBJECTIONS TO TESTIMONY FILED BY DEFENDANT** |

1

### I. Wood's Opinion Is Inadmissible Because It Is Unreliable, and Untrustworthy

**A. The *Daubert* Standard**

Federal Rule of Evidence 702 provides that a witness qualified as an expert may render an opinion if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The rule imposes a "gatekeeping" obligation upon trial courts to exclude "expertise that is fausse and science that is junky." *Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049, U.S. Dist. LEXIS 26995, at *14 (C.D. Cal. Mar. 4, 2011).

*Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993) requires a two-pronged analysis. Under the first prong, "the court must determine whether an expert's testimony reflects 'scientific knowledge,' whether the findings are 'derived by the scientific method,' and whether the work product is 'good science' -- in other words, whether the testimony is reliable and trustworthy." *Pierson v. Ford Motor Co.*, No. 06-6503, 2009 U.S. Dist. LEXIS 65297, at *7 (N.D. Cal. Apr. 16, 2009). Under the second prong, "the court must determine whether the testimony is 'relevant to the task at hand.'" *Id.*

**B. Dr. Wood's Testimony Is Untrustworthy And Unreliable**

Dr. Wood's "opinion" is nothing more than an untrustworthy cookie-cutter opinion that she has resurrected from a prior engagement. In this case, Wood opined that consumers would have made varied buying decision had Ford fully disclosed the fact that the Ford Vehicles suffer from an inherent defect. Coincidentally, however, Wood rendered a similar opinion – almost verbatim from the one offered here -- earlier this year in *Webb v. Carter's Inc.*, 255 F.R.D. 658 (C.D. Cal. 2011).

Here, Wood opined in relevant part:

> I hold the following opinions with a reasonable degree of scientific certainty:
>
> a. Had additional information suggested by plaintiffs been provided by Ford, consumers would not have uniformly noticed and read it because of the large amount of sources and large amount of information available to consumers for consideration about vehicle purchases and differences among consumers in their knowledge, experience, and behavior goals.
>
> b. Had the additional information suggested by plaintiffs been placed in locations available to consumers, it would be selected for further processing only by those aware that such information might be present and with an interest in seeking it.
>
> c. Had the additional information suggested by plaintiffs been provided by Ford, those consumers who noticed and read it would differ in the factors that motivate their response to the information. Supp. Tufaro Decl. Ex. 25.

Wood's Opinion above is virtually mirror image of her testimony in *Carter's Inc.*:

> I hold the following opinions with a reasonable degree of scientific certainty:
>
> a. Had additional information suggested by plaintiffs been provided with Carter's Fall 2007 line of clothing, consumers would not have uniformly noticed and read it because consumers differ in their knowledge, experience, and behavior goals in seeking information about children's clothing.
>
> b. Had the additional information suggested by plaintiffs been placed on in-store sings or clothing labels in the retail environment or on the internet, it would be selected for further processing only by those aware that such information might be present and with an interest in seeking it.

3

PLAINTIFF'S OBJECTIONS TO TESTIMONY FILED BY DEFENDANT

   c. Had the additional information suggested by plaintiffs been provided, those consumers who noticed and read it would differ in the factors that motivate their response to the information. Supp. Tufaro Decl. Ex. 25.[1]

  Wood's Opinion is nothing more than a "cut and paste" of the very same opinion that she provided in *Carter's Inc.*. There, Wood opined that had Carter's made disclosures about certain children's clothing's potential to cause a skin rash, consumers would have made varied buying decisions. Wood advances the very same opinion, here but has merely changed the name of the defendant from "Carter's" to "Ford" and the product at issue from "children's clothing" to the "Ford Vehicles." It is blatantly obvious that, in light of such similarity, Wood performed absolutely no analysis unique to the facts presented by this case, and, therefore, her opinion is nothing more than an unreliable and untrustworthy sham opinion. Therefore, Wood's opinion fails the first prong of the *Daubert* analysis.

  Furthermore, it is well established that an expert's repeated use of her own cookie-cutter opinions renders such opinions unreliable and untrustworthy. *Wooley v. Smith & Nephew Richards, Inc.*, 67 F. Supp. 2d 703, 707 (S.D. Tex. 1999) ("The conclusion reached by Dr. Yarus in this case typifies this 'expert's' apparent penchant for producing what some have called 'cookie cutter' opinions . . . , because the language used here by Dr. Yarus closely mirrors that used in reports for plaintiffs in other . . . litigation.") (citing *McLellan v. Sofamor-Danek Group, Inc.*, No. 95-CV-0322E(H), 1999 U.S. Dist. LEXIS 5144, at*10 (W.D.N.Y. April 12, 1999) ("This Court need not entertain 'opinion evidence which is connected to existing data only by the ipse dixit of the expert.'"); *see also Solorio v. Asplundh Tree Expert Co.*, No. 02-08035, 2009 U.S. Dist. LEXIS 23354, at *17 fn 9 (S.D.N.Y. Mar. 20, 2009) ("The Court also takes into consideration the various indicia of sloppiness and

---

[1]  As further evidence of the fact that Wood's opinion is simply a "cut and paste" of her prior opinion is the fact that Wood failed to change "plaintiffs" to "plaintiff."

carelessness in [the] proposed expert opinion, as evinced by the Rule 26 Report, inter alia, . . . citing another plaintiff's medical records as a reference to this case; [] copying the references from a previous expert report rather than conducting his own independent literature search; and [] failing to review all of these references that were copied from a previous expert report.").

Thus, Wood's opinion should be excluded.

### C.  Wood Is Notorious For Proffering Inadmissible "Expert" Testimony

When faced with a motion to exclude Wood's testimony, courts throughout the nation have resoundingly concluded that Wood's testimony was unreliable and inadmissible. *E.g.*, *Holland v. Walter Kidde Portable Equip., Inc.*, No. 2:05-cv-325, 2008 U.S. Dist. Lexis 109981, at *28  (N.D. Ala. Mar. 24, 2008) (excluding Wood's testimony because her "opinion [was] nothing but speculation."); *Sherman v. Sunsong Am., Inc.*, No. 8:04cv300, 2007 U.S. Dist. LEXIS 16732, at *9-*10 (D. Neb. Mar. 6, 2007) (excluding Wood's proffered opinion as an attempt to answer "questions of fact fully within the cognizance of people with ordinary intelligence.") *aff'd*, 532 F.3d 709 (8th Cir. 2008).  Here, too, Wood's opinion attempts to answer a question "within the experience of ordinary laymen and laywomen." *Id.* at *10. What a "reasonable consumer" would do if certain disclosures were made, such as the effect of Ford disclosing the defective nature of its air conditioning systems, is squarely within the province of the jury, not a "human factors" expert.  Thus, the answer to the question of materiality is not dependent on specialized knowledge or experience beyond that of an ordinary layperson.

Finally, Woods, who purports herself to be a warnings expert, will attempt to opine on any matter for which Ford is willing to pay her. *E.g.*, *Ford Motor Co.*, 2009 U.S. Dist. LEXIS, at *9-*10 (excluding the testing and opinions of Ford's human factors expert Christine Wood because she attempted to give "engineering opinions" that she was not qualified to give).  In fact, Ford alone has employed Wood over 6 times in the last 4 years to render opinions, some of which she is not

qualified to render. Wood Decl. at 26-29. *See also Ford Motor Co.*, 2009 U.S. Dist. LEXIS, at *9-*10.

## II. Conclusion

In light of the foregoing, Plaintiff respectfully requests that this Court strike Wood's testimony.

Dated: July 5, 2011  **KIESEL BOUCHER LARSON LLP**

By: */s/ Paul R. Kiesel*
Paul R. Kiesel
Steven D. Archer
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310)854-4444
Facsimile: (310)854-0812

Paul O. Paradis
Gina M. Tufaro
Efrat Pellet
**HORWITZ, HORWITZ & PARADIS, Attorneys at Law**
570 Seventh Avenue, 20th Floor
New York, NY 10018
Telephone: 212/986.4500
Facsimile: 212/986.4501

Richard L. Moomau
**MOOMAU & ASSOCIATES**
300 Esplanade Drive, Suite 900,
Oxnard, CA 93030
Telephone: 805/981.3979
Facsimile: 805/981.1765